## KELLY v. UNITED STATES.*

### GALEN v. SAME.

#### (Circuit Court of Appeals, Ninth Circuit. May 6, 1918.)

#### Nos. 3048, 3047.

1. CONTEMPT ⧈⟹54(3)—PROCEEDINGS—INFORMATION.
   Where the informations charging contempt were presented by the United States district attorney, the facts may be alleged on information and belief.

2. INDICTMENT AND INFORMATION ⧈⟹52(1)—SUFFICIENCY—VERIFICATION.
   In the federal courts, despite Const. Amend. 4, a defendant may be charged and tried for a misdemeanor on an information not verified or supported by affidavit.

3. CONTEMPT ⧈⟹60(3)—CRIMINAL CONTEMPT—CONVICTION.
   In criminal contempt cases, the presumption of innocence attends the accused, and he is to be adjudged guilty only upon evidence which carries conviction beyond a reasonable doubt.

4. CONTEMPT ⧈⟹66(7)—REVIEW—FINDINGS.
   In a proceeding for criminal contempt, the finding of the trial court has the conclusiveness of a verdict, if sustained by substantial evidence, and the only question for the reviewing court is whether there was substantial evidence to support it.

5. CONTEMPT ⧈⟹14—MISCONDUCT AFFECTING JURY.
   In order that one may be held for contempt for communications with jurors, it is not necessary to prove that the communications had, or acts done, were accompanied by a wrongful intent; it being sufficient if they would have a tendency to improperly affect the action of the jury.

───────────
⧈⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied October 14, 1918.

6. CONTEMPT ☞60(3)—MISCONDUCT AFFECTING JURORS—EVIDENCE.
    In a proceeding to punish attorneys for contempt, evidence *held* to show misconduct in communications and meetings with jurors, etc.

In Error to the District Court of the United States for the District of Montana; Geo. M. Bourquin, Judge.

Daniel M. Kelly and Albert J. Galen were convicted and adjudged guilty of contempt (243 Fed. 696), and they separately bring error. Judgments affirmed.

L. O. Evans, of Butte, Mont., W. B. Rodgers, of Anaconda, Mont., F. C. Walker, of Butte, Mont., and W. T. Pigott, M. S. Gunn, F. W. Mettler, and E. G. Toomey, all of Helena, Mont., for plaintiff in error Kelly.

W. T. Pigott, Carl Rasch, F. W. Mettler, E. G. Toomey, and M. S. Gunn, all of Helena, Mont., William Wallace, Jr., of New York City, L. O. Evans and F. C. Walker, both of Butte, Mont., and Charles Donnelly, of St. Paul, Minn., for plaintiff in error Galen.

Burton K. Wheeler, U. S. Atty., and James H. Baldwin, Asst. U. S. Atty., both of Butte, Mont., and Homer G. Murphy, Asst. U. S. Atty., of Helena, Mont.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge. The plaintiffs in error in these two cases were adjudged by the court below to be guilty of contempt of court, and were fined $500 each for conduct in relation to jurors impaneled in the trial of a criminal case which had been pending in that court, in which case they had been the attorneys for two of the ten defendants therein. On the charges of contempt the court below found that during intervals of the trial of that case the plaintiffs in error knowingly visited and conversed with certain members of the jury, with a view of improperly influencing them in said case; that Galen so visited and conversed with the juror Warner, and furnished him liquid refreshments; that Kelly visited and conversed with the juror Brown, and furnished him liquid refreshments; and that both Galen and Kelly visited and conversed with the juror Warren, and promised to introduce him to members of the Legislature then in session, to secure him support for a proposed bill which he was promoting.

[1, 2] The objection was made in the court below, and it is reasserted here, that the informations charging the contempts were insufficient to confer jurisdiction, for the reason that they were verified upon information and belief. The informations were presented by the United States district attorney. While in some of the states it is held that the material allegations in the accusation or affidavit charging contempt must be made as of the personal knowledge of the affiant, we find no exception to the rule that, when the charges are made on the complaint or information of the state's attorney or the Attorney General, the facts may be alleged upon information and belief. Poindexter v. State, 109 Ark. 179, 159 S. W. 197, 46 L. R. A. (N. S.) 517; Hurley

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

v. Commonwealth, 188 Mass. 443, 74 N. E. 677, 3 Ann. Cas. 757; Emery v. State, 78 Neb. 547, 111 N. W. 374, 9 L. R. A. (N. S.) 1124. And such is the rule in the federal courts, where, under the provisions of the Fourth Amendment, the defendant may be charged and tried for a misdemeanor on an information not verified or supported by affidavit. Creekmore v. United States, 237 Fed. 743, 150 C. C. A. 497, L. R. A. 1917C, 845; Weeks v. United States, 216 Fed. 292, 132 C. C. A. 436, L. R. A. 1915B, 651, Ann. Cas. 1917C, 524.

[3, 4] It is contended that the evidence is insufficient to sustain the convictions, and that the charges were not proven beyond a reasonable doubt. The proceedings in contempt cases, it is true, require a finding of guilt upon testimony as in criminal cases, and the presumption of innocence attends the accused, and he is to be adjudged guilty only upon evidence which carries conviction beyond a reasonable doubt; nevertheless the finding of the court in such a case has the conclusiveness of a verdict of a jury, if it is sustained by substantial evidence. In Bessette v. W. B. Conkey Co., 194 U. S. 324, 338, 24 Sup. Ct. 665, 48 L. Ed. 997, the court said that, on the appeal from a judgment of conviction on contempt proceedings, "only matters of law are considered. The decision of the trial tribunal, court or jury, deciding the facts is conclusive as to them." See, also, Schwartz v. United States, 217 Fed. 866, 133 C. C. A. 576, Oates v. United States, 233 Fed. 201, 147 C. C. A. 207, and the decision of this court in Re Independent Pub. Co., 240 Fed. 849, 862, 153 C. C. A. 535, L. R. A. 1917E, 703, Ann. Cas. 1917C, 1084.

[5, 6] With that rule of law in mind, we turn to the evidence, not to weigh it, or to consider its credibility, but to ascertain whether there was any substantial evidence which, if credited, is sufficient to support the judgment. It may be conceded that there was no evidence that in any of the conversations there was any discussion of the pending case, or anything said in relation thereto, and that there was no evidence that in said conversations either of the respondents actually promised Warner to introduce him to members of the Legislature. Warner testified that twice he conversed with Kelly and asked him for introductions to legislators, and that Kelly said something about waiting until after the trial—that "he didn't care to do it now." Galen testified that Warner twice approached him in regard to his bill, and wanted to talk to him about it; that the first time he told Warner he had not time to fool with that, and the second time he said: "For Christ's sake, wait until after this trial is over." There was testimony that on one occasion in the Placer Hotel lobby Kelly conversed with Brown for a period of 15 or 20 minutes, and that thereafter they went together into the barroom, and that Kelly paid for the drinks for Brown and for several bystanders. The evidence that Galen drank with Warner consists in testimony that one evening during the trial a witness saw Galen standing in the hotel lobby, where he was joined by Warner; that, after conversing about a minute, they went beyond and behind a post, and out of the vision of the witness, whence the only outlets were the barroom entrance and a stairway descending to a toilet room; and the further fact that at the conclusion of the trial

Warner admitted to the district attorney that, after having the talk with Galen, he and Galen went into the barroom, and had a drink.

The principal question in the case is whether the conduct of the plaintiffs in error, so shown by the evidence and found by the court, was such as to constitute contempt of court. In order that one may be held for contempt for communications with jurors, on the ground of the harmful tendency thereof, it is not necessary to prove that the communications had or the acts done were accompanied with a wrongful intent. It is sufficient if such acts and communications were knowingly and willfully done and had, and had the tendency to influence improperly the action of the jury. 13 C. J. 45; United States v. Anonymous (C. C.) 21 Fed. 761; In re Terry (C. C.) 36 Fed. 419, 430; Ellis v. United States, 206 U. S. 246, 257, 27 Sup. Ct. 600, 51 L. Ed. 1047, 11 Ann. Cas. 589. In Wartman v. Wartman, Taney, 362, Fed. Cas. No. 17,210, Chief Justice Taney said:

"As regards the question whether a contempt has or has not been committed, it does not depend on the intention of the party, but upon the act he has done. It is a conclusion of law from the act."

In 38 Cyc. 1826, it is said:

"It is the duty of counsel to keep away from jurors when out of the courtroom during trials, and not to converse with them beyond the exchange of the usual salutations. They are bound to the highest honor and integrity, and the utmost good faith in the trial of causes."

That text was quoted and approved in Sandstrom v. Oregon-Washington, etc., Co., 69 Or. 194, 136 Pac. 878, 49 L. R. A. (N. S.) 889, where it was held that the act of counsel for the defendant in treating the jury to ice cream at their suggestion was misconduct for which the jury should have been discharged. A similar ruling was made in Steenburgh v. McRorie, 60 Misc. Rep. 510, 113 N. Y. Supp. 1122, where an attorney treated the jurors to cigars. The court said:

"The act * * * gives rise to a suspicion of attempted improper influence."

In Poindexter v. State, 109 Ark. 179, 159 S. W. 197, 46 L. R. A. (N. S.) 517, an attorney invited a juror and a deputy sheriff into his room and gave them a drink of whisky. This was held sufficient to warrant a conviction of all three for contempt of court. In re Odum, 133 N. C. 250, 45 S. E. 569, the contemnor was the defendant in an action which was pending, and invited one of the jurors to his room, where he entertained him all night, and on the next day he was seen in a secluded place talking to another juror. The court, while holding that this was punishable as contempt, reversed the conviction "with reluctance," for the reason that a Code provision excluded the offense from the list of contempts. In People v. Montague, 71 Mich. 447, 39 N. W. 585, Judge Campbell said:

"The most dangerous form of influence is that which brings jurors and parties or counsel into familiar intercourse, which offers opportunity for insidious and indirect means of persuasion and conciliation, which operates sometimes unconsciously, but none the less forcibly. It may be no harm is intended, but it is not always easy to tell whether there is or not."

In that case it was held that the verdict should be set aside for the reason that the district attorney had furnished liquor and cigars in public saloons to members of the jury. In Murphy v. Wright, 167 Iowa, 75, 148 N. W. 985, it was shown that a juror was seen engaged in talking with the brother of the defendant, and the two entered a liquor saloon, where one of the defendant's witnesses invited them to drink with him, which they did. The court said:

"No juror, however honest of purpose, can properly expose himself to such suspicion by intimate association, pending a trial in which he is engaged, with one of the parties, or with a party's close relatives, witnesses, and cronies; and if he does so, we think the court ought not to be held to exceed its rightful powers in adjudging him to be in contempt."

Similar decisions are Craig v. Pierson Lumber Co., 169 Ala. 548, 53 South. 803; State v. Snow, 130 Minn. 206, 153 N. W. 526; Walker v. Walker, 11 Ga. 203; Rainy v. State, 100 Ga. 82, 27 S. E. 709; Scott v. Tubbs, 43 Colo. 221, 95 Pac. 540, 19 L. R. A. (N. S.) 733; S. & M. Min. Co. v. Showers, 6 Nev. 291.

We are aware that there are a few cases in which courts have dealt leniently with conduct such as that of these plaintiffs in error, as found by the court below, and have held the same to be but impropriety, and not ground for a new trial, or for a judgment of contempt. State v. Clark, 134 Mo. App. 55, 114 S. W. 536; Feary v. Metropolitan Street Ry. Co., 162 Mo. 75, 62 S. W. 452. But the weight of authority is otherwise, and we are not convinced that in this case the court below has erred in holding that the acts of the plaintiffs in error were such as to tend to obstruct the administration of justice, and were therefore contempt of court. It may be taken for granted that jurors of ordinary intelligence and fairness may not be influenced by such things as were done here; but the matter must be judged by its natural tendency to affect weak jurors, or those who are easily influenced. All will agree that it is of the utmost importance that juries be jealously guarded against all improper influences, and that public policy, as well as the honor of the bar, requires that jury trials be beyond suspicion. To that end it is essential that there be no exchange of favors, and no personal or social intercourse between the parties litigant, or their attorneys or friends, and the jurors who are called to decide the issues of a pending case.

The judgments are affirmed.