**Dorsey K. OFFUTT, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 12750–1.**

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 22, 1955.

Decided Feb. 16, 1956.

Petition for Rehearing Denied April 6, 1956.

Writ of Certiorari Denied June 11, 1956.

See 76 S.Ct. 1049.

Mr. Warren E. Magee, Washington, D. C., with whom Miss Charlotte Maskey, Washington, D. C., was on the brief, for appellant.

Mr. Oliver Gasch, Principal Asst. U. S. Atty., with whom Messrs. Leo A. Rover, U. S. Atty., Lewis Carroll and David W. Kindleberger, Asst. U. S. Attys., were on the brief, for appellee.

Before EDGERTON, Chief Judge, and BAZELON and FAHY, Circuit Judges.

FAHY, Circuit Judge.

When the Supreme Court in Offutt v. United States, 348 U.S. 11,[1] 75 S.Ct. 11, 99 L.Ed. 11 reversed our modified affirmance of the District Court's conviction of appellant of criminal contempt it did so on the basis of the rule pronounced in Cooke v. United States, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767. The Court regarded this decision as applicable because of the District Judge's personal involvement in the incidents out of which the alleged contempt arose during the trial of United States v. Peckham.[2] The judge presided at the trial and appellant defended Peckham. The Supreme Court thought that the fair administration of justice required the contempt proceedings to be removed from the atmosphere created by the controversies between the judge and appellant which occurred during the trial. The Court said:

"In the language of the Cooke case, with one appropriate change, 'We think, therefore, that when this case again reaches the District Court, to which it must be remanded, the judge who imposed the sentence herein should invite the (Chief) Judge of the (District Court) to assign another judge to sit in the second hearing of the charge against the petitioner.' See 267 U. S., at page 539." 348 U.S. at page 18, 75 S.Ct. at page 15.

On the remand another judge was duly assigned to sit. The United States Attorney filed with him an application for an order to show cause why appellant should not be held in contempt of court. Such an order was made and served. It called upon appellant to show cause why he should not be adjudged in criminal contempt of the District Court for misbehaving in the presence of the court or so near thereto as to obstruct the administration of justice[3] in the following two respects:[4]

"I. On numerous occasions, he made insolent, insulting and offensive remarks to the court, and was guilty of gross discourtesy to the court.

\*   \*   \*   \*   \*

"III. On several occasions he asked of witnesses questions that were highly prejudicial to the witness and for which there was no foundation. Thus, he asked Mary Ott, the victim of the abortions charged against the defendant [Peckham], 'When were you arrested in this case?' As a matter of

---

1. Reversing Offutt v. United States, 93 U.S.App.D.C. 148, 208 F.2d 842.

2. The conviction in that case was reversed in Peckham v. United States, 93 U.S.App. D.C. 136, 210 F.2d 693.

3. The applicable statute reads in pertinent part:
   "A court of the United States shall have power to punish by fine or impris-

onment, at its discretion, such contempt of its authority, and none other, as—
   "(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice; \* \* \*." 62 Stat. 701 (1948), 18 U.S.C. § 401 (1952).

4. Two other charges, numbered II and IV, were included, but as to them appellant was found not guilty.

fact she never had been arrested and when called to account by the court, Offutt only answered that he had a right to enquire *whether* the witness had been arrested in this case."

The case was heard by the newly assigned judge. The United States introduced in support of the charges the transcript of the Peckham trial. Appellant offered to prove by the testimony of himself and members of the bar who were present during that trial that he was not insolent and did not make insulting and offensive remarks to the court and was not guilty of gross discourtesy to the court; that, instead, the presiding judge at the Peckham trial throughout its course exhibited anger, temper and an antagonistic attitude toward appellant and his client, racing him through the examination of witnesses and generally exhibiting impetuosity toward appellant; that the prosecutor indulged in unusual and unseemly conduct and made prejudicial statements; that this attitude on the part of judge and prosecutor made it extremely difficult for appellant properly to present the defense; that he took no action or attitude except to preserve error on the record; that his objections and motions which were based upon the conduct, personal mannerisms, tone of voice, gesticulations, movements and actions of the trial judge, were made in good faith and for the purpose of protecting the accused; that all questions were asked of the witnesses in good faith and for the purpose of putting the witnesses in their true light and to show to the jury the meretricious relationships of witnesses as those relationships affect morals, hence credibility; that appellant believed when he asked the questions that there was a proper foundation for each; that appellant acted in good faith in accordance with what he believed to be the law and in order to afford effective assistance of counsel to his client; and that his actions were not for the purpose of prejudicing witnesses.

Appellant's proffer was denied and the case was decided on the basis of the transcript of the Peckham trial. Appellant was found guilty of criminal contempt on each of the two charges hereinabove set forth. His punishment was fixed as a fine of $500.

A necessary and logical consequence of the Supreme Court's requirement that the Cooke procedure be applied was that such testimony as appellant proffered should have been received and considered. Ordinarily where the conduct alleged to be criminally contemptuous occurs during a trial the presiding judge sees and hears all that bears upon the issue of contempt. No additional testimony is needed in the usual summary proceedings under § 42(a), Fed.R.Crim. P. 18 U.S.C. But here a different judge sat. The transcript alone did not make available to him all relevant and material evidence.

■ Evidence of the general purport of that proffered was relevant and material and should have been received. With reference to Charge I, demeanor might have an important bearing on whether appellant was guilty of "gross discourtesy" to the court, or whether his remarks were "insolent, insulting and offensive." Evidence as to tone and inflection of voice and manner of behavior might give character to the printed word. And if after receiving the evidence the court believed Offutt guilty of contempt, the evidence might induce the court to mitigate the punishment. The Cooke opinion refers to the right of the accused "to call witnesses to give testimony, relevant either to the issue of complete exculpation or in extenuation of the offense and in mitigation of the penalty to be imposed." 267 U.S. at page 537, 45 S. Ct. at page 395. While that case differed from this one in that Cooke's alleged contempt was not committed in open court, they are the same in that both were required to be heard by a judge other than the one involved in the incidents, and it is this which we regard as determinative. If the court excludes such evidence as was offered we think Offutt is denied a full and fair means of defending, or mitigating his punish-

ment, within the principles of the Cooke case. We think this conclusion is in harmony with the Supreme Court's view that since the contempt power is not circumscribed by all of the constitutional safeguards accompanying an ordinary criminal trial, its exercise must be carefully regulated. See In re Michael, 326 U.S. 224, 227, 66 S.Ct. 78, 90 L.Ed. 30; Nye v. United States, 313 U.S. 33, 49, 61 S.Ct. 810, 85 L.Ed. 1172; Offutt v. United States, 348 U.S. 11, 14, 75 S.Ct. 11, 99 L.Ed. 11.

Like considerations apply to the proffer relating to Charge III. It may be true that a finding of contumacious intent is not always a prerequisite to a contempt conviction under 18 U.S.C. § 401(1); absence of such intent may go only to mitigation. Kelly v. United States, 9 Cir., 250 F. 947, 950; United States v. Sanders, D.C.W.D.Tenn., 290 F. 428, 437; cf. Clark v. United States, 8 Cir., 61 F.2d 695, 704, affirmed 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 519; Cammer v. United States, 96 U.S.App.D.C. 30, 223 F.2d 322, certiorari granted 350 U.S. 817, 76 S.Ct. 55; South Butte Mining Co. v. Thomas, 9 Cir., 260 F. 814, 821, certiorari denied 253 U.S. 486, 40 S.Ct. 483, 64 L.Ed. 1026; In re Braun, D.C.M. D.Pa., 259 F. 309, 311. But a finding of "misbehavior" is essential. See note 3 supra. Thus, when the conduct in question is not clearly blameworthy, consisting, as here, of asking witnesses incompetent questions, there is no contempt unless there is some sort of wrongful intent. Cf. In re Watts & Sachs, 190 U. S. 1, 32, 35, 23 S.Ct. 718, 47 L.Ed. 933; Wilson v. State of North Carolina, 169 U.S. 586, 600, 18 S.Ct. 435, 42 L.Ed. 865; May Hosiery Mills v. United States District Court, 9 Cir., 64 F.2d 450, 453. See, also, Comment, 48 Mich.L.Rev. 860, 864–868; Harper and Haber, "Lawyer Troubles in Political Trials," 60 Yale L.J. 1,

19. If Offutt was guilty of "gross discourtesy" to the court, or if his remarks in all the circumstances were "insolent, insulting and offensive," as is alleged in Charge I, and he were found guilty of misbehavior by reason of such conduct there would be no need to make special inquiry into intent, except as to mitigation.[5] In that event the finding of misbehavior might be regarded as including, by necessary implication, a finding of wrongful intent. But the conduct involved in Charge III is of a different character. If Offutt were able to introduce evidence tending to prove that he believed there was a foundation for the questions he asked the witnesses, the court might conclude that he was not guilty of misbehavior in asking them. We do not mean that his mere assertion, or his other evidence, would necessarily outweigh the inferences which may be drawn from the record, but he should have the opportunity to introduce such evidence for the court's consideration. And, in addition, some of the evidence offered no doubt would be relevant and material to the question of mitigation.

We add that in the exercise of a sound discretion the hearing judge may control the scope of testimony and the number of witnesses, to avoid cumulative testimony and prevent placing on trial either the judge before whom the alleged contempt occurred or the prosecutor in the Peckham trial. What is required, however, is that the accused be permitted to adduce testimony which fairly depicts to the deciding judge the actual conduct of the accused in the setting in which it occurred.

It is not necessary to discuss the other points raised by appellant; for upon remand the case may be disposed of consistently with this opinion.

Reversed and remanded.

---

5. Since the conduct occurred in the presence of the court we think if it is found to constitute misbehavior the essential elements of the charge would be proved. See text at note 3 supra.